UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMICAS, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 08-11589-LTS |
| | ) | |
| GMG HEALTH SYSTEMS, LTD, d/b/a | ) | |
| GONZABA MEDICAL GROUP, | ) | |
| | ) | |
| Defendant | ) | |

**OPPOSITION TO AMICAS' MOTION FOR DISMISSAL OF
GMG NEGLIGENT MISREPRESENTATION COUNTERCLAIM**

Defendant GMG Health Systems, Ltd., d/b/a Gonzaba Medical Group ("GMG") opposes the motion served February 18, 2009 ("Motion") by the Plaintiff, AMICAS, Inc. ("Amicas") arguing in a nine-page memorandum ("Memorandum") that GMG Counterclaim IV for negligent misrepresentation ("GMG Counterclaim IV") should be dismissed under F.R.Civ P. 12(c). On this Motion all factual averments of the GMG Counterclaims are to be accepted as true, and all reasonable inferences are to be drawn in favor of GMG. Memorandum, p. 2, 3.

**(a)   Argument.**

The Motion is appropriate to be denied on the papers and without hearing. The Motion is unsupported by any case law or valid argument, and is directly contrary to clear and controlling Massachusetts law.

1.   The Motion is solely based on the argument that the so-called economic loss doctrine applies to GMG Counterclaim IV. The current Massachusetts version of the economic loss doctrine originated in a negligence case affecting real property. *Stop &*

1

*Shop Cos. v. Fisher*, 387 Mass. 889, 893-894 (1983); *Restatement (Second) of Torts*, § 766C (1979). The economic loss doctrine (or bar) subsequently was applied to certain negligence cases involving product defects covered by a warranty or other contractual provisions. E.g. *Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989).

The economic loss doctrine in Massachusetts has never been applied to negligent misrepresentation claims, the subject of GMG Counterclaim IV. Massachusetts law is the opposite. "An exception to the [economic loss] doctrine <u>permits</u> recovery for economic losses resulting from negligent misrepresentation." *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass.App.Ct. 15, 20 (1998)(emphasis added).

The Motion strenuously tries to avoid *Nota* and all other Massachusetts case law as to the tort of misrepresentation by relying on *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 89-90 (D. Mass. 1998) (Memorandum 4-8). As shown below, *Sebago* is only superficially similar to this case. *Sebago* is not relevant to negligent misrepresentation claims at all, and is plainly distinguishable from this case, and from the *Nota* rule and other misrepresentation case law uniformly favorable to GMG.[1]

*Sebago* is distinguishable from the facts alleged in GMG Counterclaim IV on several grounds. Without limitation, *Sebago* involves claims of negligence based on installation of an allegedly defective root product. The negligence claims in *Sebago* were controlled by the law of Maine, not Massachusetts. *Sebago*, 18 F.Supp at page 89. The

---

[1] See Point 2, below. Amicas concedes that the Massachusetts Appeals Court in *Nota*, <u>supra</u>, stated without qualification an exception to the economic loss doctrine for all claims of negligent misrepresentation. Memorandum, note 5. That was Massachusetts law prior to *Nota*. <u>See</u> *Craig v. Everett M. Brooks, Co.,* 351 Mass. 497, 499-501 (1967), cited in *Nota,* 45 Mass. App. Ct. at 20.

2

claims for property damage were by persons (real estate buyers) not in privity with the allegedly negligent actors, the roof product installers.  Judge Wolf in that context addressed plaintiffs' specific argument that the completed purchased realty was "other property" not covered by the economic loss doctrine (or bar).  Judge Wolf disagreed, holding that the installed defective roofs were integrated into the real property.  The relevant defective product, accordingly, was the purchased building, and not the roof component only, and the bar applied.  *Id.*, at 92.

The *Sebago* reasoning and holding is irrelevant to the present case.  GMG Counterclaim IV asserts misrepresentations by a party, Amicas, in privity with GMG, as to Amicas services and products, not negligence causing physical injury.

A narrow view of *Sebago* is supported by *Cummings v. HPG*, 244 F.3d 116, 23-24 (2d Cir. 2001).  *Cummings* makes clear that the *Sebago* "product" reasoning by Judge Wolf is limited to the specific facts there.  *Cummings,* unlike *Sebago,* involves claims for negligent misrepresentation.  The District Court in *Cummings* (Judge Woodlock) applied the *Sebago* reasoning to bar negligent misrepresentation claims.  The First Circuit disagreed and found the *Sebago* reasoning not relevant to negligent misrepresentation.  *Cummings* explicitly describes the *Sebago* reasoning as relevant only if a dispute <u>solely</u> involves a negligently defective product as to which a warranty remedy is available.  244 F.3d at 23-24.  *Cummings* separately makes clear that in Massachusetts law, negligent misrepresentation claims are <u>not</u> barred by the economic loss doctrine.  244 F.3d at 19.  *Cummings* correctly describes the rule in *Nota* as flatly stated as to <u>all</u> negligent misrepresentation claims "without drawing distinctions" as to whether the

3

misrepresentations involved goods, money, or services or any other subject matter. 244 F.3d 19. [2]

*Cummings* affirms the summary judgment against the plaintiff because there was no record proof of negligence as to falsity of the representations. 244 F.3d 16, 22 ("Cummings failed to prove … HPG could have known the representations were false when made"). *Cummings* describes the rule in *Sebago* (a rule irrelevant here) as being that "where a commercial product injures itself [sic] and nothing or no one else [sic], there is no need to create [sic] a product liability cause of action independent of contract obligation." *Cummings*, 244 F.3d at 16, 19. This wording, whatever it means for other cases, does not place misrepresentations within the economic loss doctrine or bar.

Here the text of GMG Counterclaim IV makes clear that the GMG Counterclaim IV is for negligent misrepresentation as to both services and licensed software, and ineffective warranties fraudulently induced. See Amicas Memorandum, pp. 2-3, quoting portions of the GMG Counterclaims. GMG Counterclaim IV is therefore wholly unlike the *Sebago* defective product installation. The relevant disputes here involve negligent misrepresentations by Amicas as to services while Amicas was in privity with GMG.

**2.** The history of the economic loss doctrine as developed in Massachusetts makes plain that the doctrine is not ever applicable to negligent misrepresentation, including GMG Counterclaim IV.

---

[2] The physically defective product discussion in *Sebago* predates *Nota* by several months. Compare *Nota*, supra, at 45 Mass.App.Ct. 15, 20 (decided May 29, 1998) with *Sebago* (decided March 31, 1998). The broad Massachusetts negligent misrepresentation rule stated in *Nota* long predates 1998 as is made clear in *Nota* by reliance on *Craig*, a 1967 case. See *Nota*, 45 Mass.App.Ct. at 20.

4

The economic loss doctrine in Massachusetts has its origin in negligence physically affecting land or structures, a topic irrelevant here. *Stop & Shop*, supra, 387 Mass. 889, 893 (1983). Years earlier, the recovery of damages for negligent misrepresentation was the subject of judicial scrutiny intended to limit recovery by parties not in privity with the author of the negligent falsehoods. *Ultramares v. Touche, Niven*, 225 N.Y. 170, 189 (1931)(Cardozo, J). That topic is also not directly relevant here because Amicas and GMG were in privity.

Years prior even to *Ultramares*, the controlling judicial concern as to recovery for economic losses arising from negligence physically affecting property was the nature of the relation between the negligent actor and the claimant. *Robbins v. Flint Drydock*, 275 U.S. 303, 309 (1927)(Holmes, J). In *Robbins* the Supreme Court refused recovery to a time charterer for economic losses caused by negligent physical damage to a propeller during regular drydocking of a vessel. The physical damage done to the vessel propeller in drydock was "no wrong to the time charterer but only [a wrong] to those [the vessel owner] to whom the propeller belonged. *Robbins*, 275 U.S. at 309. *Robbins,* in 1927 is, on information, the American origin of the economic loss doctrine.

At present, long after *Robbins* and *Ultramares*, judicial concern as to the scope of compensable and foreseeable injuries caused by negligent misrepresentations continues apace. See *NYCAL v. KMPG*, 426 Mass. 491 (1998); *North American v. LaPalme*, 258 F.3d 35, 42-43 (1st Cir. 2001). Those cases try to set workable limits on recoveries by plaintiffs not in privity with the authors of the negligent misrepresentations. In these cases, GMG's point here that economic losses are recoverable for negligent

5

misrepresentation claims is assumed to be correct, and is not in those cases (e.g., after *Nota*) discussed or debated. Id.

Here, unlike any of the cases giving rise to the economic loss doctrine (*Robbins, Ultramares, NYCAL,* or *LaPalme),* Amicas at all relevant times was in privity with GMG. Here, unlike *Sebago,* Amicas is alleged to have directly misrepresented facts to GMG as to Amicas services and not products, allegations not identical to mere negligence as to a product (assuming licensed software is a product). Amicas is alleged to have negligently induced GMG to sign a long-term contract for services based on false Amicas representations to GMG about those services. See GMG Counterclaim IV, quoted in Amicas Memorandum at p. 2-3. GMG alleges it suffered substantial damages because of Amicas' false pre-contractual misrepresentations and ongoing deficiencies in the Amicas services; that Amicas warranties failed of their essential purposes; and that the Agreement was fraudulently induced. Id. GMG on this record is a proper plaintiff with a direct economic interest in the misrepresented Amicas services. Id. The Amicas misrepresentations directly and adversely impacted the property and business of GMG (the delivery of medical services) by burdening GMG with falsely described and inadequate services and software. Id.

 **3.** The Amicas February 18 Motion in principle is baseless or incorrect, apart from *Nota* and other decided cases, because the Motion contradicts or seeks to ignore at least two principles basic to the economic loss doctrine (or bar).

 **(a)** Apart from *Nota* and other decided cases, the economic loss doctrine cannot be applicable to negligent misrepresentation as a matter of substantive law. Amicas concedes that GMG can recover pecuniary losses. Memorandum, note 5.

6

Amicas nevertheless asserts that GMG cannot recover <u>economic</u> losses within the economic loss doctrine.  <u>Compare</u> Memorandum, note 2, <u>with</u> Memorandum, note 5.  Pecuniary loss <u>is</u> an <u>element</u> of negligent misrepresentation.  In Massachusetts, to recover for negligent misrepresentation, a plaintiff <u>must</u> show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) <u>causing and resulting in pecuniary loss to those others</u> (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information (emphasis added).  *Fox v. F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 551 (Mass. App. Ct. 1996) (citing *Restatement (Second) of Torts* § 552(1) (1977)); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998).  Consistent with the recovery of economic losses for misrepresentation claims, Massachusetts law does not yet recognize a tort if negligent misrepresentation causes physical injuries only.  *Giancostas v. Interface*, 450 Mass. 715, 728 (2008) and cases there.

      Amicas by the Motion seeks dismissal based on a non-articulated and non-tenable distinction between allegedly non-recoverable "economic loss" and recoverable "pecuniary loss."  There is no such valid distinction.  The Motion argues for none.  The Motion by silence ignores the plain meanings of words.  Because pecuniary loss is an element of any claim for negligent misrepresentation, the economic loss doctrine cannot apply to negligent misrepresentation claims.  The decided cases (*Nota*, etc.) correctly follow the logic of the substantive law.  <u>See</u> *Nota,* 45 Mass. App. at 20.  Cases involving intentional misrepresentation likewise involve a "historic focus . . . on economic

interests" and likewise permit recovery of economic loss damages. *Conley v. Romeri*, 60 Mass.App.Ct. 799, 802 n.3 (2004). [3]

      **(b)** Negligent <u>service</u>, a subject of GMG Counterclaim IV, is an exception to, and are not within, the economic loss doctrine. The economic loss doctrine, when correctly applied, only involves products or negligent physical damage to things. Points 1-2, above. The GMG Counterclaim IV indisputably alleges misrepresentations as to services by a party in privity. Amicas Memorandum, pp. 2-3. <u>See</u> text attached to the Complaint ("Agreement"), (at Tab A, Art. 12 ("support services"))(copy at Exhibit A, attached). The title of the writing attached to the Amicas Complaint (Tab A) is "Software License Hardware <u>Services and Support</u> Agreement." (emphasis added) Amicas sues GMG on a contract for the sale by Amicas there of "software licenses, <u>services</u> and other items as may be listed on the schedules" (Agreement, Art. 1)(emphasis added). Software support is expressly within the contract at issue. <u>See</u> Exhibit A, Art. 12, plus all of Exhibit 2.

    GMG Counterclaim IV alleges negligent misrepresentations by Amicas as to, among other topics, the services and support which Amicas promised to supply. Memorandum, p. 2-3. The Amicas Motion is properly denied on that basis alone because Amicus concedes that negligent misrepresentations as to services are excluded from the

---

[3] According to Amicas the economic loss doctrine prohibits recovery "for economic losses in tort-based strict liability or negligence cases [sic] absent personal injury or physical damage to one's property." Amicas Memorandum, note 2. Whatever these words suggest as to negligence causing physical damage, they do not reach negligent misrepresentation claims.

economic loss doctrine.  See Amicas Memorandum, note 5, describing services as excluded from the economic loss doctrine. [4]

**4.**     The Amicas Motion serves no practical purpose.  All of the issues relevant to the GMG negligent misrepresentation counterclaim are discoverable and will be relevant at trial even if GMG Counterclaim IV was not asserted.  By contrast, the identical motion against GMG Counterclaim IV will be available to Amicas at or after trial.

Amicas misrepresentations to GMG are relevant not only to recovery of damages under GMG Counterclaim IV but also to such issues as the statute of frauds, parol evidence, Amicas misrepresentations as to the effectiveness of Amicas warranties, failures of Amicas warranties to serve their essential purposes, and to GMG defenses based on wrongful Amicas inducement of any agreement by misrepresentations.

When, as here, a warranty fails of its essential purpose, the recipient of a defective product may recover its damages which result from the contract breach without regard to the warranty limitation of damages.  G.L. c. 106, §2-719; *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.,* 767 F.Sup. 363, 374 (D.Mass. 1991).  As noted by the Federal District Court in *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1099

---

[4] GMG Counterclaim IV, served November 6, 2008, alleges negligent misrepresentations as to both goods and services.  The GMG Counterclaims include services to be provided after the software was licensed to make the software fully functional throughout the duration of a long-term contract.

The text of the February 6, 2009 document discovery requests by GMG makes the same point.  See Exhibit B, attached.  Roughly 27 of 33 GMG document requests address Amicas representations as to Amicas support or services.  The Motion ignores the text of both documents.

(S.D.N.Y. 1995), interpreting Massachusetts law, "[a] remedy fails where 'applying it would cause a buyer to receive less than what the contract calls for. "Whether a remedy has failed of its essential purpose is a question of fact." *Boston Helicopter Charter, Inc. v. Agusta Aviation*, 767 F. Supp. 363, 373 (D.Mass. 1991) ("where a repair-or-replace remedy deprives the buyer of minimum adequate remedies, the warranty will be said to have failed of its essential purpose.")

Under Massachusetts law a fraud operative at the time of contract formation prevents enforcement of the contract term if judicial enforcement would reward the misrepresentations. See *McEvoy Travel v. Norton*, 408 Mass. 704, 712 -713 (1990):

> "In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it." *Bates v. Southgate,* supra at 182.  See *Broomfield v. Kosow,* supra; *Sandler v. Elliott,* 335 Mass. 576 (1957).

*McEvoy*, supra at 712-713 (emphasis added).  All Amicas misrepresentations to GMG are therefore discoverable and will be relevant at trial.  GMG Counterclaim IV validly seeks recovery of damages based on those independently relevant issues.

## **CONCLUSION**

The Motion fails to show any basis in case law or otherwise to support dismissal of the present GMG Counterclaim IV for negligent misrepresentation.  GMG requests the Motion be denied without hearing, with other consistent relief to GMG.

|  |  |
|---|---|
|  | GMG HEALTH SYSTEMS, LTD.,<br>By its attorneys, |
|  |  |
|  | /s/ Kevin G. Kenneally_____<br>Kevin G. Kenneally, BBO #550050<br>Paul G. Boylan, BBO #052320<br>LeClairRyan, *A Professional Corporation*<br>One International Place, 11th Floor<br>Boston, MA  02110<br>(617) 502-8200<br>Kevin.Kenneally@leclairryan.com |
| Dated: February 26, 2009 | Paul.Boylan@leclairryan.com |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: February 26, 2009                            /s/ Kevin G. Kenneally_____
                                                                    Kevin G. Kenneally

4956699v11